UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAISY MEADOWS, a/k/a ROY TROST,<br><br>                    Plaintiff,<br><br>     v.<br><br>HENRY ATENCIO; RONA SIEGERT; HOWARD YORDY; WALTER CAMPBELL; MARTIN ALVISO; SUMMER ELDRIDGE; DEFENDANT VALLEY; MARC AIELLO; ADMINISTRATIVE REVIEW COMMITTEE; MANAGEMENT TREATMENT COMMITTEE; DEFENDANT BLAIR; DEFENDANT SANDERS; SHERIFF WATSON; DEFENDANT TAYLOR; DEFENDANT HAUGHN; JENNIFER TYVAND; DEFENDANT MARTIN; and JEREMY CLARK,<br><br>                    Defendants. | Case No. 1:18-cv-00265-DCN<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff's Complaint as a result of her status as an inmate. The Court now reviews the Complaint to determine whether it should be summarily dismissed in whole or in part under 28 U.S.C. § 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 1

1.      **Screening Requirement**

The Court is required to review complaints filed by prisoners seeking relief against a governmental entity, or an officer or employee of a governmental entity, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

2.      **Pleading Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted).

3.     **Factual Allegations**

Plaintiff Daisy Meadows, also known as Roy Trost—the name under which she was convicted—is a prisoner in the custody of the Idaho Department of Correction ("IDOC"), currently incarcerated at Idaho State Correctional Center ("ISCC"). Plaintiff was born a male but identifies as a transgender female. *See Compl*., Dkt. 3, at 2. Before Plaintiff was incarcerated in Idaho, she had been diagnosed with gender dysphoria ("GD") while in the custody of the Nevada Department of Correction. She had also been sexually assaulted by a Nevada correctional officer. After she was transferred to Idaho custody, Plaintiff was again diagnosed with GD. *Id*.

The IDOC's Management Treatment Committee ("MTC") met with Plaintiff several times to discuss medical treatment for her GD. Plaintiff "sought hormonal treatment as well as electrolosis [sic] hair removal on her face, also 'GRS' gender reassignment surgery, bra, panties, makeup, cosmetics, [and] breast surgery." *Id*. Plaintiff also asked to be housed in a women's prison and "to be treated equally to that of other women with dignity and respect." *Id*.

The MTC evidently approved at least two of these treatment options. Plaintiff started hormone treatment in July 2017. By January 2018, she was taking the maximum dosage of three different hormones. Plaintiff was also provided a bra memo through medical, which allowed her to have a bra. *Id*. at 2-3.

Plaintiff states that in December 2017 and February 2018, she "met with a[n] outside 'GD' specialist," Dr. Martin Alviso,[1] who wanted to recommend sex reassignment surgery and panties for Plaintiff; however, Dr. Alviso stated he had been prohibited by prison officials from prescribing any such treatment. *Id*. at 3. Plaintiff alleges that the same thing happened in March 2018 when she was evaluated by Dr. Eldridge—the doctor concluded that surgery and panties were medically necessary but stated that she was not permitted to recommend that treatment. *Id*. Plaintiff identifies the individuals who instructed Alviso and Eldridge in this manner as (1) Rona Siegert, a member of the MTC, (2) Walter Campbell, the chief psychiatrist for the IDOC, and (3) Henry Atencio, the director of the IDOC. *Id*. at 11-12, 14, 16.

Plaintiff states that, "[r]ather than provide [her] with appropriate medical care and treatment, 'IDOC' administrators, directors, staff, correctional officers, [and] psychiatrist[s] ... subjected [Plaintiff] to daily psychological torture and abuse." *Id*. at 3. Plaintiff states that her constitutional rights have been violated in the following ways:

- Withdrawing necessary medical care because plaintiff is transsexual ...;

- Refusing to place Plaintiff in appropriate housing and subjecting her to known risks, resulting in the repeated sexual assault of Plaintiff;

- Refusing to allow Plaintiff to express her gender, which is female;

---

[1] Although Plaintiff's allegation that Dr. Alviso was an "outside" specialist implies that he is a private physician rather than a prison doctor, Plaintiff later states that Dr. Alviso works for the IDOC. The Court will give Plaintiff the benefit of the doubt and assume, at this time, that Dr. Alviso is an IDOC employee. Plaintiff is advised that a private party is not subject to suit under § 1983 except in very narrow circumstances. *See NCAA v. Tarkanian*, 488 U.S. 179, 191 (1988) (stating that § 1983 does not provide a remedy for purely private conduct, "no matter how unfair that conduct may be"); *see also Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) ("[S]tate action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.") (internal quotation marks omitted).

- Harassing and humiliating Plaintiff in extreme fashion, ridiculing her for being a transsexual woman, forcing her knowingly to be bullied[,] sexually abused and harassed;

- Knowing of serious injuries caused by a brutal rape and not providing adequate treatment[,] being deliberately indifferent and forcing [Plaintiff] to endure the pain.

- Ussing [sic] oppression and conversion therapy to enforce policies to try and force [Plaintiff] to be/act like a male, knowing that Plaintiff is in fact a transsexual woman diagnosed with 'GD.'

- enforcing inappropriate search procedures by not allowing female officers to search her, knowing that Plaintiff was a victim of a [correctional officer] sexually assaulting her in Nevada.

- IDOC refusing to acknowledge, regard, or treat [Plaintiff] as the woman she is.

*Id*. at 3-4.

Plaintiff also alleges that several Unit 10 correctional officers moved a "pimp" into Plaintiff's cell despite Plaintiff's pleas that she was afraid of being assaulted. Plaintiff was later raped by this cellmate. *Id*. at 20-25.

For the following reasons, the Court concludes that some, but not all, of Plaintiff's claims are plausible.

## 4.  Section 1983 Claims

Plaintiff brings her federal claims under 42 U.S.C. § 1983, the civil rights statute.[2] To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct

---

[2] Plaintiff also invokes the Violence Against Women Act ("VAWA"). *Compl*. at 1. However, Plaintiff's federal claims are more appropriately considered civil rights claims under § 1983.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 5

of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Though § 1983 requires "state" action—meaning *governmental* action—states and state entities themselves are immune from suit in federal court pursuant to the Eleventh Amendment.[3] *Hans v. Louisiana*, 134 U.S. 1, 16-18 (1890); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

Prison officials and prison medical providers generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045. However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d

---

[3] For this reason, Plaintiff's claims against the MTC and the Administrative Review Committee—which are both state entities—are implausible and must be dismissed. If Plaintiff intends to sue the State of Idaho or any state entities, she must do so in state court.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 6

1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).

A plaintiff can establish this causal connection by plausibly alleging that a defendant

(1) "set[] in motion a series of acts by others"; (2) "knowingly refus[ed] to terminate a

series of acts by others, which [the supervisor] knew or reasonably should have known

would cause others to inflict a constitutional injury"; (3) failed to act or improperly acted

in the training, supervision, or control of his subordinates"; (4) "acquiesc[ed] in the

constitutional deprivation"; or (5) engag[ed] in "conduct that showed a reckless or callous

indifference to the rights of others." *Id*. at 1205-09.

Plaintiff asserts her § 1983 claims under the Cruel and Unusual Punishments

Clause of the Eighth Amendment and the Equal Protection Clause of the Fourteenth

Amendment. *Id*. at 3-4.

### A.      *Eighth Amendment Claims*

The Eighth Amendment to the United States Constitution protects prisoners

against cruel and unusual punishment. To state a claim under the Eighth Amendment, a

prisoner must plausibly allege that she is "incarcerated under conditions posing a

substantial risk of serious harm" or that she has been deprived of "the minimal civilized

measure of life's necessities" because of the defendants' actions. *Farmer v. Brennan*, 511

U.S. 825, 834 (1994) (internal quotation marks omitted).

Where a prisoner challenges the conditions of her confinement, she must make

two showings. First, the plaintiff must make an objective showing that the deprivation

was "sufficiently serious" to form the basis for an Eighth Amendment violation. *Johnson

v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Second, the plaintiff must make a subjective

showing that the defendant acted "with a sufficiently culpable state of mind"; that state of mind is referred to as "deliberate indifference." *Id*. at 731, 733 (internal quotation marks omitted).

A prison official acts with deliberate indifference "only if the [official] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (internal quotation marks omitted), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188. Further, even if prison officials actually knew of a substantial risk of serious harm to an inmate, they still cannot be held liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

      i.    <u>Unlawful Search Claims</u>

Plaintiff alleges that she was unconstitutionally searched by male prison guards and was required to take a urinalysis test in front of male guards. She asserts that, because of her history of sexual abuse, she suffered fear and psychological harm as a result of these searches. *Compl*. at 4, 17. "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth

Amendment," but such pain can be psychological as well as physical. *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (internal quotation marks omitted).

However, like physical pain, psychological pain must be intentionally or recklessly inflicted to violate the Eighth Amendment. Even strip searches, which are "unpleasant, humiliating, and embarrassing to prisoners," do not, without more, violate the Constitution. *Bromell v. Idaho Dep't of Corr.*, Case No. 2:05-cv-00419-LMB, 2006 WL 3197157, at *2 (D. Idaho Oct. 31, 2006) (quoting *Calhoun v. Detella*, 319 F.3d 936, 939 (7th Cir. 2003). In general, when a prisoner is subjected to a bodily search, the Eighth Amendment is violated only if the search "is performed in a harassing manner intended to humiliate and inflict psychological pain." *Id.* at *4.

For psychological pain arising from body searches to give rise to an Eighth Amendment claim, the pain must be severe. *See Somers v. Thurman,* 109 F.3d 614, 616 (9th Cir. 1997) (holding that the Eighth Amendment did not prohibit female guards from performing visual body cavity searches on male inmates or watching male inmates shower, despite one inmate's allegation that the guards pointed, joked and "gawked" at him); *Grummett v. Rushen,* 779 F.2d 491, 493 n.1 (9th Cir. 1985) (holding that a prison's policy allowing female guards to observe male inmates disrobing, showering, using the toilet and being strip-searched, and allowing them to conduct pat-down searches in the groin area, did not amount to "the type of shocking and barbarous treatment" prohibited by the Eighth Amendment). Therefore, it is generally quite difficult for a prisoner to state

a plausible Eighth Amendment claim arising from being searched, even by guards of the opposite sex.

In truly exceptional circumstances, however, a cross-gender body search may give rise to a deliberate indifference claim even when the inmate is clothed and the search is performed, not with an intent to punish or humiliate, but in accordance with prison policy. The analysis of whether an inmate has stated such a claim depends on (1) "the preexisting mental conditions of the ... inmate[]" who was searched, which could have caused that inmate "to react differently to the search[]" than other inmates would, and (2) "the intrusive nature of the search[]." *Watison*, 668 F.3d at 1113 (internal quotation marks and alterations omitted).

For example, the Ninth Circuit has held a prison's bodily search policy unconstitutional where that policy "require[d] male guards to conduct random, non-emergency, suspicionless clothed body searches on female prisoners." *Jordan v. Gardner*, 986 F.2d 1521, 1522 (9th Cir. 1993) (footnote omitted). In *Jordan*, the female inmates who were searched "had particular vulnerabilities," such as a "long history of sexual abuse by men," that "would cause the cross-gender clothed body searches to exacerbate symptoms of [the inmates'] pre-existing mental conditions." *Id*. at 1523, 1526. Moreover, the searches were particularly intrusive—requiring guards to "push inward and upward when searching the crotch and upper thighs of the inmate," to squeeze and knead "[a]ll seams in the leg and the crotch area," and to use the back of the hand "to search the breast area in a sweeping motion, so that the breasts will be flattened"—and

INITIAL REVIEW ORDER BY SCREENING JUDGE - 10

thorough searches could take several minutes. *Id*. at 1523 (internal quotation marks, citations, and alterations omitted). The history of the inmates and the intrusiveness of the searches in that case led the court to conclude that the search policy violated the inmates' right to be free from cruel and unusual punishment.

Plaintiff has not plausibly alleged that the unidentified prison guards who searched her or required her to take a urinalysis test have violated the Eighth Amendment or that any bodily search policy to which she was subjected is of the rare type prohibited by the Eighth Amendment. Plaintiff states only that she has been searched by male guards and that she was sexually assaulted by a prison guard in Nevada, statements that are far too vague to support a reasonable inference that the searches were anywhere near as invasive or psychologically harmful as those at issue in *Jordan*. Therefore, Plaintiff's unlawful search claims will be dismissed.

ii.     Verbal Abuse and Harassment Claims

Plaintiff claims that she has been disrespected, verbally abused, and harassed by various Defendants. Inmates have an Eighth Amendment right to be free from "calculated harassment unrelated to prison needs." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). However, verbal harassment, abuse, or threats, without more, are not sufficient to state a constitutional deprivation under § 1983. *Oltarzewski v. Ruggiero*, 830 F.2d 136 (9th Cir. 1987) (allegations that correctional counselor told plaintiff that he would transfer him to a higher custody status unit if he tried to go to the law library and that he would be sorry if he filed a class action suit were not actionable under § 1983); *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (allegations that defendant "personally informed plaintiff that

if he never cut his hair and shaved his beard that he would lose what class he had and would have a bad time at Wrightsville" and that defendant "verbally abused and threatened him for filing grievances" did not constitute a constitutional violation); *McFadden v. Lucas*, 713 F.2d 143, 147 (5th Cir. 1983) ("While twenty-two officers armed with sticks and threatening demeanor may arguably be excessive, we must, in the absence of physical abuse, concur with the lower court's dismissal. The alleged conduct, absent more, cannot be said to rise to the level of conduct which 'shocks the conscience.'" (citation omitted)).

Plaintiff's specific allegations of verbal abuse by various individual Defendants, focused on her transgender status, do not rise to the level of "the type of shocking and barbarous treatment" that constitutes calculated harassment. *Grummett,* 779 F.2d at 493 n.1. Further, her conclusory statements that Defendants have disrespected her and subjected her to "psychological torture and abuse" need not be accepted by the Court. *See also Iqbal*, 556 U.S. at 686-87 (2009) ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."). Thus, the Court will dismiss Plaintiff's claims of verbal abuse and harassment as implausible.[4]

---

[4] The Court does not intend to suggest that disrespectful behavior by prison guards is acceptable—merely that Plaintiff has not plausibly alleged that, in her case, such behavior rose to the level of cruel and unusual punishment.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 12

### iii.   Failure-to-Protect Claims

Plaintiff alleges that she has been subjected to "repeated sexual assault" in prison. *Compl.* at 4. Prison officials who act with deliberate indifference "to the threat of serious harm or injury" by one prisoner against another are subject to liability under § 1983. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). "Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833 (internal quotation marks, citation, and alterations omitted). Although even an obvious danger does not result in liability if the official is not subjectively aware of it, a prison official cannot "escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Id.* at 843.

Plaintiff's allegations that (1) Defendants Blair, Taylor, Sanders, and Martin moved a prisoner whom Plaintiff describes as a "pimp" into her cell—after Plaintiff expressed her fear of attack—and (2) she was later sexually assaulted by that cellmate, state a plausible failure-to-protect claim against these four Defendants.[5]

---

[5] Although Plaintiff alleges that Defendants Watson, Haughn, and Tyband were also involved in placing this inmate in Plaintiff's cell on Unit 10, those claims are implausible because none of these Defendants had any authority or input into inmate housing; Watson was a "clinical supervisor" of Unit 16, Haughn was a clinician, and Tyvand was Plaintiff's case manager. *Compl.* at 27-29. Further, Plaintiff's allegation that Defendant Aiello "removed [Plaintiff] from in house meals," thereby requiring her to eat with other inmates in the dining hall, does not state a claim for relief because Plaintiff does not allege that she was left unprotected as a result—for example, she does not allege that inmates ate in the dining hall without

iv.      Inadequate Medical Treatment Claims

The Eighth Amendment includes the right to adequate medical and mental health care in prison. Prison officials or prison medical providers can be held liable under § 1983 if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, the Supreme Court of the United States has explained that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain ....

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc). An allegation that a prisoner suffers from gender dysphoria is generally sufficient to plausibly allege a serious medical need. *See, e.g., Mitchell v. Kallas*, 895 F.3d 492, 499 (7th Cir. 2018) ("[L]eaving serious medical conditions, including gender

---

supervision by correctional officers. *Id*. at 20. Finally, the initial decision to house Plaintiff in a men's prison, without more, does not plausibly suggest deliberate indifference.

dysphoria, untreated can amount to unconstitutional deliberate indifference."); *Denegal v. Farrell*, No. 1:15-cv-01251-DAD-MJS, 2016 WL 3648956, at *5 (E.D. Cal. July 7, 2016) ("Plaintiff's allegation that she suffers from untreated symptoms of gender dysphoria is sufficient to allege a serious medical condition.").

In the medical context, a conclusion that a defendant acted with deliberate indifference requires that the plaintiff show "a purposeful act or failure to respond to a prisoner's pain or possible medical need and ... harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by [non-medical] prison [officials] in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted). However, medical malpractice or negligence cannot support a cause of action under the Eighth Amendment, *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam), and a delay in treatment does not violate the Eighth Amendment unless the delay causes further harm, *McGuckin*, 974 F.2d at 1060. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

The Eighth Amendment does not provide a right to a specific treatment, *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997), and differences in judgment between an inmate

and prison medical providers—or between different medical providers—regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim, *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *see also Lamb v. Norwood*, 895 F.3d 756, 760 (10th Cir. 2018) ("[P]rison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants."). To state an Eighth Amendment claim "involving choices between alternative courses of treatment," a plaintiff must plausibly allege "that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

That is, a plaintiff must plausibly allege that medical providers chose one treatment over the plaintiff's preferred treatment "even though they knew [plaintiff's preferred treatment] to be medically necessary based on [the plaintiff's] records and prevailing medical standards." *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1117 (N.D. Cal. 2015). The lack of a medical opinion recommending one treatment over another is not fatal to a plaintiff's claim if "the state has failed to provide [the plaintiff] access to a physician competent to evaluate her." *Rosati v. Igbinoso*, 791 F.3d 1037, 1040 (9th Cir. 2015).

The Eighth Amendment requires that prison medical providers exercise informed medical judgment. Therefore, if a certain medical treatment is denied because of a

blanket governmental policy, rather than an individualized determination of the

appropriate treatment for the inmate, a factfinder may infer deliberate indifference. *See*

*id.* at 1039-40 ("Rosati plausibly alleges that prison officials were aware of her medical

history and need for treatment, but denied the surgery because of a blanket policy against

[sex reassignment surgery]."); *Allard v. Gomez*, 9 F. App'x 793, 795 (9th Cir. 2001)

(unpublished) ("[T]here are at least triable issues as to whether hormone therapy was

denied ... on the basis of an individualized medical evaluation or as a result of a blanket

rule, the application of which constituted deliberate indifference to [plaintiff's] medical

needs.").

However, if providers make an individualized assessment and choose a treatment

that—in their informed judgment—is medically appropriate, a plaintiff generally cannot

prevail on a deliberate indifference claim. *See Lamb*, 895 F.3d at 760 ("[The plaintiff] is

obtaining psychological counseling and hormone treatments, including estrogen and

testosterone-blocking medication. Though prison officials have not authorized surgery or

the hormone dosages that [the plaintiff] wants, the existing treatment precludes a

reasonable fact-finder from inferring deliberate indifference."); *Supre v. Ricketts*, 792

F.2d 958, 963 (10th Cir. 1986) ("While the medical community may disagree among

themselves as to the best form of treatment for plaintiff's condition, the Department of

Corrections made an informed judgment as to the appropriate form of treatment and did

not deliberately ignore plaintiff's medical needs. The medical decision not to give

plaintiff estrogen until further study does not represent cruel and unusual punishment.").

In such a case, a plaintiff can state a plausible Eighth Amendment claim only if the defendants intentionally interfered with appropriate medical diagnosis and treatment—for example, by "creat[ing] a pretextual report to support denial" of a requested treatment. *Norsworthy*, 87 F. Supp. 3d at 1117 (denial of sex reassignment surgery).

The only individual Defendants Plaintiff identifies as having been personally involved in decisions about Plaintiff's medical treatment are Defendants Alviso, Eldridge, Siegert, Campbell, and Atencio. As set forth above, Alviso and Eldridge are treating medical providers who both allegedly "knew and told plaintiff she needed [surgery] but ... had been advised that he [or she] could not recommend it." *Id*. at 11-12. Defendants Siegert, Campbell, and Atencio are the prison officials who allegedly instructed Alviso and Eldridge not to recommend this treatment for Plaintiff. *Id*. Plaintiff also appears to claim that these Defendants have required her to conform to a stereotypically "male" image and prohibited her from expressing her femininity—for example, by wearing makeup and female clothing or by removing her facial hair. Plaintiff contends that feminine expression is a necessary medical treatment for her GD.

These allegations state a plausible claim that Defendants Alviso, Eldridge, Siegert, Campbell, and Atencio have violated Plaintiff's Eighth Amendment right to adequate medical care with respect to her GD. Further, because Defendant Atencio—as the Director of the IDOC—appears to have direct responsibility in the area in which Plaintiff seeks relief, he is the appropriate Defendant with respect to Plaintiff's claims for

injunctive relief. *See Rounds v. Or. State Bd. of Higher Educ.*, 166 F.3d 1032, 1036 (9th Cir. 1999).

Therefore, Plaintiff may proceed on her Eighth Amendment medical treatment claims against Defendants Alviso, Eldridge, Siegert, Campbell, and Atencio. However, because Plaintiff has included no other specific allegations of any other Defendant's actions with respect to her GD treatment, she may not proceed on such claims against the other Defendants.

### B.    *Equal Protection Claims*

Plaintiff also invokes the Equal Protection Clause of the Fourteenth Amendment. The purpose of that clause "is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (internal citation and quotation marks omitted). Under the Equal Protection Clause, "all persons similarly circumstanced shall be treated alike" by governmental entities. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920). However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940).

Additionally, even where similarly-situated persons are treated differently by the state, "state action is presumed constitutional and 'will not be set aside if any set of facts reasonably may be conceived to justify it.'" *More v. Farrier*, 984 F.2d 269, 271 (9th Cir. 1993) (quoting *McGowan v. Maryland*, 366 U.S. 420, 426 (1961)). Absent evidence of

INITIAL REVIEW ORDER BY SCREENING JUDGE - 19

invidious discrimination, the federal courts should defer to the judgment of prison officials. *See id.* at 277; *Youngbear v. Thalacker*, 174 F. Supp. 2d 902, 916 (D. Iowa 2001) ("There can be no 'negligent' violations of an individual's right to equal protection.... There is no evidence from which the court may infer that the defendants' asserted reasons for delaying the construction of a sweat lodge at the [prison] were a pretext for discrimination.").

Equal protection claims alleging disparate treatment or classifications generally are subject to a heightened standard of scrutiny if they involve a "suspect" or "quasi-suspect" class, such as race, national origin, or sex, or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution. *See, e.g., City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985). Otherwise, equal protection claims are subject to a rational basis inquiry. *See Heller v. Doe*, 509 U.S. 312, 319-20 (1993).

In a rational basis analysis, the relevant inquiry is whether Defendants' action is "patently arbitrary and bears no rational relationship to a legitimate governmental interest." *Vermouth v. Corrothers*, 827 F.2d 599, 602 (9th Cir. 1987) (quotation omitted). Under this rational basis test, a plaintiff can prevail only if (1) she is similarly situated with persons who are treated differently by the defendants, and (2) the defendants have no rational basis for that disparate treatment. Stated another way, prison officials need show only a rational basis for dissimilar treatment to defeat the merits of an inmate's claim. *Id.* In addition to the deference inherent in a rational basis inquiry, an additional

layer of deference to prison officials is required under *Turner v. Safley*, 482 U.S. 78, 89-81 (1987), in which the Supreme Court held that a prison official's action is constitutional so long as it is reasonably related to a legitimate penological purpose. *Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004) ("In the prison context, ... even fundamental rights such as the right to equal protection are judged by a standard of reasonableness—specifically, whether the actions of prison officials are reasonably related to legitimate penological interests." (quotation omitted)).

Here, although it is unclear precisely which conduct by which Defendants allegedly violated Plaintiff's right to equal protection, it appears that Plaintiff's Fourteenth Amendment challenge is aimed at her placement in a men's prison. That is, Plaintiff claims that IDOC's decision to house her in a men's prison violates equal protection. She contends that, because her gender identity is female, she must be housed in a women's prison.

These equal protection claims are implausible and will be dismissed. Prison officials unquestionably have a legitimate interest in separating male inmates from female inmates and in housing them in separate facilities by classifying those inmates by gender. In the case of most inmates, that classification is simple. However, classifying an inmate by gender, for purposes of housing, becomes more complex in the case of inmates with GD. Idaho prison officials have chosen to classify the gender of inmates based on the anatomical genitalia of the inmates, rather than on their gender identity. This choice

of classification is rationally related to the legitimate penological interest of safeguarding the inmates at the women's prison from sexual assault or other violence by male inmates.

Plaintiff does not dispute that she has male genitalia. Therefore, prison officials' decision to house her in a men's prison—even though her gender identity is female—is rationally related to a legitimate penological purpose. Although Plaintiff believes that classifying inmates based on their gender identity would be preferable, she has not plausibly alleged that IDOC's chosen classification system is without a rational basis.

     v.     <u>Prohibition on Feminine Expression</u>

Plaintiff also claims that being required to conform to a stereotypically "male" image and being prohibited from expressing her femininity—for example, by wearing makeup and getting her facial hair removed—constitutes discrimination based on her gender identity. However, given that Plaintiff is housed in a men's prison, officials' attempts to keep Plaintiff from expressing a stereotypically female image are rationally related to the legitimate penological interest in keeping Plaintiff safe from sexual assault by male inmates. Indeed, rather than invidious discrimination, the "obvious alternative explanation" for Defendants' insistence on the way Plaintiff expresses herself is that they are trying to keep Plaintiff safe. *Iqbal*, 556 U.S. at 682 (internal quotation marks omitted). Therefore, these claims are implausible and will be dismissed.[6]

---

[6] As stated above, however, Plaintiff may proceed on her Eighth Amendment claims that, by denying her the ability to express her femininity, Defendants Alviso, Eldridge, Siegert, Campbell, and Atencio have denied Plaintiff a necessary medical treatment.

5.      **State Law Claims**

Plaintiff also asserts state law claims, presumably claims of negligence and

medical malpractice. *Compl.* at 1. In a negligence action under Idaho law, "the plaintiff

must establish the following elements: '(1) a duty, recognized by law, requiring the

defendant to conform to a certain standard of conduct; (2) a breach of duty; (3) a causal

connection between the defendant's conduct and the resulting injuries; and (4) actual loss

or damage.'" *Jones v. Starnes*, 245 P.3d 1009, 1012 (Idaho 2011) (quoting *Hansen v. City*

*of Pocatello*, 184 P.3d 206, 208 (Idaho 2008)). A plaintiff asserting a medical malpractice

claim also must submit the claim to a prelitigation screening panel in accordance with

Idaho Code § 6-1001.

For the reasons set forth above with respect to Plaintiff's Eighth Amendment

medical treatment and failure-to-protect claims, Plaintiff has also stated plausible state-

law claims—specifically, that (1) Defendants Alviso, Eldridge, Siegert, Campbell, and

Atencio acted negligently, or committed medical malpractice, with respect to Plaintiff's

treatment for GD; and (2) Defendants Blair, Taylor, Sanders, and Martin acted

negligently in placing a sexually violent inmate in Plaintiff's cell. The Court will exercise

supplemental jurisdiction over these claims under 28 U.S.C. § 1367.

## MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

Plaintiff has filed a document entitled a "Motion/Petition for the Court to order

Defendants ... to Use Female Pronouns," and to use the name "Daisy Meadows," when

referring to Plaintiff, instead using of male pronouns and the name under which Plaintiff

was convicted. (Dkt. 6.) This appears to be a motion for a preliminary injunction, which is governed by Rule 65 of the Federal Rules of Civil Procedure.

Preliminary injunctive relief may be granted only if the moving party demonstrates the following: (1) the moving party will suffer irreparable injury if the relief is denied; (2) the moving party will probably prevail on the merits; (3) the balance of potential harm favors the moving party; and (4) the public interest favors granting relief. *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987). "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Dominion Video Satellite v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001).

The purpose of a preliminary injunction is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions of the parties until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Thus, the type of relief a plaintiff is seeking governs the Court's ability to grant a preliminary injunction. Specifically, the following principles inform the Court's analysis: (1) a *prohibitory* injunction is intended to preserve the status quo; (2) a *mandatory* injunction "goes well beyond simply maintaining the status quo ... and is particularly disfavored"; and (3) a request for a mandatory preliminary injunction can be granted only if "the facts and law clearly favor the moving party." *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (internal quotation marks and alteration omitted).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 24

In deciding whether to issue a preliminary injunction, the Court "is not bound to decide doubtful and difficult questions of law or disputed questions of fact." *Internat'l. Molders' and Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Industries, Inc. v. Tapewriter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)). A court "is not obliged to hold a hearing [on a motion for a preliminary injunction] when the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1176 (3rd Cir. 1990).

Although Plaintiff has alleged sufficient facts to proceed on some of her claims, the Court cannot conclude—at this early stage of the proceedings—that she is likely to succeed on the merits of those claims or that the facts and law clearly favor her position. *See Winter*, 555 U.S. at 20; *Stanley*, 13 F.3d at 1320. Therefore, the Court will deny without prejudice Plaintiff's motion for a preliminary injunction.

## MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff also seeks appointment of counsel. Unlike criminal defendants, prisoners and indigents in civil actions have no constitutional right to counsel unless their physical liberty is at stake. *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981). Whether a court appoints counsel for indigent litigants is within the court's discretion. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

In civil cases, counsel should be appointed only in "exceptional circumstances." *Id*. To determine whether exceptional circumstances exist, the court should evaluate two

factors: (1) the likelihood of success on the merits of the case, and (2) the ability of the plaintiff to articulate the claims pro se considering the complexity of legal issues involved. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). Neither factor is dispositive, and both must be evaluated together. *Id*.

Plaintiff's Complaint appears to state a claim upon which relief could be granted if the allegations are proven at trial. However, without more than the bare allegations of the Complaint, the Court does not have a sufficient basis upon which to assess the merits at this point in the proceeding. The Court also finds that Plaintiff has articulated her claims sufficiently, and that the legal issues in this matter are not particularly complex. Based on the foregoing, the Court will deny Plaintiff's request for appointment of counsel. If it seems appropriate later in this litigation, the Court will reconsider appointing counsel.

A federal court has no authority to require attorneys to represent indigent litigants in civil cases under 28 U.S.C. § 1915(e)(1) or under the Court's inherent authority. *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 298 (1989) (holding that the appointment of counsel provision in § 1915, formerly found in subsection (d), does not "authorize[] a federal court to require an unwilling attorney to represent an indigent litigant in a civil case"); *Veenstra v. Idaho State Bd. of Corr.*, Case No. 1:15-cv-00270-EJL (D. Idaho May 4, 2017) ("[The Court] does not have inherent authority to compel an attorney to represent Plaintiffs pro bono."). Rather, when a Court "appoints" an attorney, it can do so only if the attorney voluntarily accepts the assignment. *Id.* The Court has no funds to pay for attorneys' fees in civil matters such as this one, and it is often difficult to

find attorneys willing to work on a case without payment—especially in prisoner cases, where contact with the client is particularly difficult. For these reasons, Plaintiff should attempt to procure her own counsel on a contingency or other basis, if possible.

## 6.      Conclusion

Plaintiff may proceed as outlined above. This Order does not guarantee that any of Plaintiff's claims will be successful. Rather, it merely finds that some of the claims are plausible—meaning that the claims will not be summarily dismissed at this time but should proceed to the next stage of litigation. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims.

Defendants may file a motion for dismissal on any basis other than failure to state a claim.[7] Because (1) prisoner filings must be afforded a liberal construction, (2) prison officials often possess the evidence prisoners need to support their claims, and (3) many defenses are supported by incarceration records, an early motion for summary judgment—rather than a motion to dismiss—is often a more appropriate vehicle for asserting defenses such as non-exhaustion or entitlement to qualified immunity. In such instances, the parties may be required to exchange limited information and documents directly relevant to the defense at issue.

## ORDER

**IT IS ORDERED:**

1.      Plaintiff's Motion for Appointment of Counsel (Dkt. 4) is DENIED.

---

[7] The standards for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are the same standards that the Court has used to screen the Complaint under §§ 1915 and 1915A.

2.      Plaintiff's Motion to Proceed on Partial Payment of Court Fees (Dkt. 5) is

DENIED for the reasons stated in the Court's order denying Plaintiff's in

forma pauperis application.

3.      Plaintiff's motion for preliminary injunctive relief (Dkt. 6) is DENIED.

4.      Plaintiff's Motion for Extension of Time to Acquire Funds to Proceed (Dkt.

11) is GRANTED. Plaintiff has now paid the full amount of the filing fee in

this case.

5.      Plaintiff may proceed on her Eighth Amendment failure-to-protect and

corresponding negligence claims against Defendants Blair, Taylor, Sanders,

and Martin. She may also proceed on her medical treatment claims, as well

as her corresponding state law claims for negligence or medical

malpractice, against Defendants Alviso, Eldridge, Siegert, Campbell, and

Atencio. All other claims and all other Defendants are DISMISSED.

6.      Plaintiff is responsible for serving a summons and a copy of the Complaint

upon Defendants Blair, Taylor, Sanders, Martin, Alviso, Eldridge, Siegert,

Campbell, and Atencio, either by formal service of process or by obtaining

signed waivers of service of summons from each Defendant or their

counsel.[8] Plaintiff must serve these Defendants within **90 days** after entry

of this Order. If she does not do so, all claims against any unserved

---

[8] Plaintiff is advised that the attorney who regularly appears in this Court in defense of IDOC officials—
and the attorney to whom a waiver of service might appropriately be sent—is Mark Kubinski, Deputy
Attorney General for the State of Idaho, Idaho Department of Corrections, 1299 North Orchard, Ste. 110,
Boise, Idaho 83706.

Defendants will be dismissed without prejudice, after notice to Plaintiff. *See* Fed. R. Civ. P. 4(m).

7.     The Clerk of Court will provide Plaintiff with (a) issued summonses for service of process upon Defendants Blair, Taylor, Sanders, Martin, Alviso, Eldridge, Siegert, Campbell, and Atencio; and (b) nine copies of the Notice of a Lawsuit and Request to Waive Service of Summons. If Plaintiff chooses to seek waivers of service, Defendants have 30 days to execute the waiver. If any Defendants do not waive service, Plaintiff must accomplish formal service of process upon them within the time limits set forth in this Order.

8.     If Defendants choose to waive service, the answer or pre-answer motion will be due in accordance with Federal Rule of Civil Procedure 12(a)(1)(A)(ii).

9.     The parties must not engage in any discovery until an answer has been filed. Within 28 days after an answer has been filed, the parties must provide each other with the following initial disclosures: all relevant information pertaining to the claims and defenses in this case, including the names of individuals likely to have discoverable information, along with the subject of the information, as well as any relevant documents in their possession, in a redacted form if necessary for security or privilege purposes; and, if necessary, they must provide a security/privilege log

INITIAL REVIEW ORDER BY SCREENING JUDGE - 29

sufficiently describing any undisclosed relevant documents which are alleged to be subject to nondisclosure. Any party may request that the Court conduct an in camera review of withheld documents or information.

10.   If, instead of filing an answer, Defendants file a motion to dismiss under Federal Rule of Civil Procedure 12(b) or a motion for summary judgment under Rule 56 that addresses preliminary procedural issues rather than the merits, then disclosures and discovery will be automatically stayed with the exception that Defendants will submit with any exhaustion-of-administrative-remedies motion a copy of all grievance-related forms and correspondence, including a copy of original handwritten forms submitted by Plaintiff that either fall within the relevant time period or that otherwise relate to the subject matter of a claim. Submission of an earlier motion for summary judgment addressing procedural or preliminary issues (such as exhaustion and early assertion of immunity defenses) does not foreclose any party from later filing a motion for summary judgment on the merits or to assert immunity or other defenses after full discovery.

11.   Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing

the manner of service, date of service, address of service, and name of person upon whom service was made.

12.     The Court will not consider *ex parte* requests unless a motion may be heard *ex parte* according to the rules and the motion is clearly identified as requesting an *ex parte* order, pursuant to Local Rules of Civil Practice before the United States District Court for the District of Idaho 7.2. ("*Ex parte*" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

13.     All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

14.     Discovery must not be filed with the Clerk of Court, but must be exchanged between parties, only, as provided for in the Federal Rules of Civil Procedure. Motions to compel discovery must not be filed unless the parties have first attempted to work out their disagreements between themselves.

15.     No party may have more than three pending motions before the Court at

one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter then pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

16.    Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

17.    Pursuant to General Order 324, this action is hereby returned to the Clerk of Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

DATED: November 29, 2018

David C. Nye
U.S. District Court Judge