UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAISY MEADOWS, a/k/a ROY TROST,<br><br>Plaintiff,<br><br>v.<br><br>HENRY ATENCIO, et al.,<br><br>Defendants. | Case No. 1:18-cv-00265-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Before the Court is Plaintiff's Motion to Amend the Complaint. Dkt. 31. Because the Plaintiff is a prisoner seeking redress from a governmental entity, officers, and employees of a governmental entity, the Court must review the proposed amended complaint pursuant to 28 U.S.C. § 1915A. Having done so, the Court enters the following order.

# BACKGROUND

On November 29, 2018, United States District Judge David Nye issued an Initial Review Order (IRO) which dismissed all claims in Plaintiff's complaint, except the following:

> Plaintiff may proceed on her Eighth Amendment failure-to-protect and corresponding negligence claims against Defendants Blair, Taylor, Sanders, and Martin. She may also proceed on her medical treatment claims, as well as her corresponding state law claims for negligence or medical malpractice, against Defendants Alviso, Eldridge, Siegert, Campbell, and Atencio.

*IRO*, Dkt. 12 at 28.

Subsequently, by order of July 26, 2019, the undersigned dismissed all claims against Defendants Atencio, Alviso, and Eldridge due to Plaintiff's failure to timely serve the Defendants or show good cause for the failure. Dkt. 30. Thus the Defendants remaining in this action are Eric Blair, Jacob Taylor, Charles Sanders, Chester Martin, Rona Siegert, and Walter Campbell. Plaintiff's surviving Eighth Amendment failure-to-protect claim is against Defendants Blair, Taylor, Sanders, and Martin. Plaintiff's medical treatment and corresponding state claims for medical malpractice is against Defendants Siegert and Campbell.

On July 29, 2019, Plaintiff filed a motion for leave to amend her complaint but failed to attach the proposed amended complaint as required by District Local Civil Rule 15.1. Dkt. 31. After Defendants filed a response pointing out the procedural shortcoming, Docket 33, Plaintiff filed the proposed amended complaint. Dkt. 33. On December 9, 2019, the Court issued an order, permitting Defendants to file a response to the proposed amended complaint. Dkt. 38.

MEMORANDUM DECISION AND ORDER - 2

Defendants filed the response on December 23, 2019. Dkt. 40. Defendants do not object to the Court granting the Motion to Amend. Instead, they ask instead that upon review pursuant to 28 U.S.C. 1915A, that the Court dismiss the proposed amended complaint in its entirety on the ground that it fails to state a claim upon which relief may be granted. Dkt. 40 at 4–5. Defendants assert that, "even under the most liberal notice pleading requirements," the proposed amended complaint fails "to allege even one plausible claim for damages by engaging in impermissibly vague group pleading." Dkt. 40 at 3, citing *Sheeran v. Blyth Shipholding SA*, 2015 WL 9048979 *3 (D.N.J. Dec. 16, 2015). Defendants argue also that, Plaintiff has not asked for relief a jury or the Court could plausibly award. Dkt. 40 at 4. Defendants request the Court screen the proposed amended complaint, pursuant to 28 U.S.C. § 1915A, dismiss it in its entirety and allow for dispositive motions on the surviving claims in the initial complaint.

## STANDARD OF REVIEW

The Prisoner Litigation Control Act of 1995 (PLRA), requires a court to "review … a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A. The PLRA requires a court to "identify cognizable claims or dismiss the complaint, or any portion of the complaint" that is "frivolous, malicious, or fails to

state a claim upon which relief can be granted; or … seeks monetary relief from a defendant who is immune from such relief." *Id.*

## DISCUSSION

As set forth above, the Court is required to review complaints filed by prisoners seeking relief against a governmental entity, or an officer or employee of a governmental entity, to determine whether summary dismissal is appropriate. 28 U.S.C. §1915A. The statute applies the requirement to "a complaint in a civil action" and thus does not restrict the review to an original complaint. *See Outley v. Penzone*, No. 2019 WL 3183521, at *2 (D. Ariz. July 15, 2019). As such, the Court must review the proposed amended complaint, and dismiss it or any portion thereof that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

### A.   Pleading Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts plead are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted).

## ANALYSIS

Plaintiff Daisy Meadows is a prisoner who was previously in custody of the Idaho Department of Correction (IDOC). She currently incarcerated at Lovelock Correctional Center in Lovelock, Nevada. Dkt. 40 at 6. In her amended complaint, which was filed before her transfer from IDOC to the Lovelock facility, Plaintiff realleges the claims set forth in her original complaint, seeking declaratory, monetary, and injunctive relief for alleged constitutional violations related to her status as a transgender inmate while housed as an inmate in Idaho. *Am. Compl.*, Dkt. 33. Plaintiff seeks to add the Idaho Department of Corrections as a defendant. *Id.* Plaintiff seeks also to add as defendants the following five individuals in their official capacities: Josh Tewalt, Director of IDOC who Plaintiff seeks to add in place of defendant Henry Atencio, former director of IDOC; Jeff Zumuda, Deputy

MEMORANDUM DECISION AND ORDER - 5

Director of IDOC; Jay Christensen[1], Warden of Idaho State Correctional Center (ISCC) in place of Howard Keith, former Warden of ISCC; Scott Eliason, M.D., Regional Psychiatric Director for Corizon and member of IDOC Management Treatment Committee for Plaintiff's care; and Jeremy Clark, Licensed Therapist and IDOC Clinical Supervisor. *See Am. Compl.*, Dkt. 33 at 8–12. In addition to adding these Defendants, Plaintiff seeks also to add claims against all Defendants under the Americans with Disabilities Act (ADA), Rehabilitation Act, and Affordable Care Act (ACA).

First, because Plaintiff is no longer housed under the supervision of IDOC or ISCC, her claims for injunctive relief to cure alleged ongoing violations of her Constitutional rights are moot. *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995) ("[a]n inmate's release from prison while [their] claims are pending generally will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action.").

Second, Defendants argue that because IDOC is a branch of the state government, IDOC has immunity in Federal court under the Eleventh Amendment. The Court agrees. *See Dana v. Tewalt*, No. 1:18-CV-00298-DCN, 2020 WL

---

[1] Plaintiff also sues Christensen only in his individual capacity.

1545786, at *5 (D. Idaho Apr. 1, 2020). Accordingly, IDOC is dismissed from all claims except Plaintiff's ADA, Rehabilitation Act, and ACA claims.

Third, the claims that are not rendered moot by Plaintiff's transfer out of IDOC and ISCC custody and supervision include any plausibly alleged claims for damages resultant from the alleged violations of Plaintiff's rights while she was held in IDOC custody. Pursuant to 28 U.S.C. § 1915A, the Court will address whether Plaintiff's amended complaint includes any such plausible claims for damages. This analysis is two-fold. First, the Court must determine if the surviving claims from the original complaint now alleged against proposed new Defendants are plausible as to those defendants[2], and second, whether the newly added causes of action in the amended complaint under the ADA, Rehabilitation Act, and ACA are plausible as to all defendants.

## A.     Failure to Protect Claim as to Newly Named Defendants

As detailed in the IRO, Plaintiff alleges that she has been subjected to "repeated sexual assault" in prison. *Compl*. at 4. Plaintiff repeats this allegation in her proposed amended complaint, asserting that, defendants failed to afford her

---

[2] Plaintiff's proposed amended complaint includes repetitious claims against once-named and currently named defendants. The Court will not screen those claims here because, after careful review, the Court finds the claims as alleged in the original complaint and as realleged in the proposed amended complaint are substantively and legally the same.

adequate protection from predatory male inmates, resulting in a 2017 sexual assault. Dkt. 33 at 17. Plaintiff's proposed amended complaint does not include any new facts or allegations related to the five newly-named defendants. Thus, as there are no factual allegations as to the new defendants regarding the failure to protect claim, the proposed amended complaint has not stated a failure to protect claim for relief that is plausible on its face as to the newly-named defendants.

**B.     Inadequate Medical Treatment and Medical Malpractice Claims as to Newly Named Defendants**

Plaintiff claims Defendants violated her Eighth Amendment Rights through deliberate indifference to her medical needs and failure to provide adequate medical treatment, including gender confirmation surgery. Dkt. 33-2 at 1–2.

In the IRO, the Court allowed Plaintiff to proceed on the inadequate medical treatment claim, as well as her corresponding state law claims for negligence or medical malpractice against Defendants Alviso, Eldridge, Siegert, Campbell, and Atencio. Dkt. 12 at 28. Alviso and Eldridge were treating medical providers who both allegedly "knew and told plaintiff she needed [surgery] but ... had been advised that he [or she] could not recommend it." Dkt. 12 at 18. Siegert, Campbell, and Atencio were the prison officials who allegedly instructed Alviso and Eldridge not to recommend this treatment for Plaintiff. *Id.* The Court later dismissed the claims against Defendants Alviso, Eldridge, and Atencio for Plaintiff's failure to

timely serve such Defendants. *See* Dkt. 30. Thus, the original Defendants subject to the claims are Siegert and Campbell, both prison officials.

In her amended complaint, Plaintiff seeks also to assert the same inadequate medical treatment and medical malpractice claims against the following five newly-proposed Defendants: Josh Tewalt, who replaced Atencio as Director of IDOC at some juncture during Plaintiff's confinement; Jeff Zumuda, Deputy Director of IDOC; Jay Christensen, Warden of Idaho State Correctional Center (ISCC), Christensen replaced Howard Yordy as Warden during Plaintiff's confinement; Scott Eliason, the Regional Psychiatric Director for Corizon; and Jeremy Clark, an IDOC clinical mental health counselor and supervisor. Dkt. 33 at 8–12.

The only claims not made moot by Plaintiff's transfer out of IDOC custody are her damages claims. In general, prison officials and prison medical providers are not liable for damages in their individual capacities under Section 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Id.* A defendant may be held liable as a supervisor under Section 1983 "if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the

**MEMORANDUM DECISION AND ORDER - 9**

constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).

A plaintiff can establish this causal connection by plausibly alleging that a defendant (1) "set[] in motion a series of acts by others"; (2) "knowingly refus[ed] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failed to act or improperly acted in the training, supervision, or control of his subordinates"; (4) "acquiesc[ed] in the constitutional deprivation"; or (5) engag[ed] in "conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1205–09.

Defendant Christensen is the only individual Plaintiff seeks to sue in both a professional and individual capacity. Christensen is Warden of Idaho State Correctional Center (ISCC). Dkt. 33 at 9–10. Plaintiff alleges that his role includes staff oversight and training, implementation of SOPs, and general management of the welfare of inmates at IDOC. *Id.* Plaintiff alleges also that Christensen was a member of the Management Treatment Committee for ISCC and thus directly participated in decisions related to her treatment. *Id.* at 10. Beyond these descriptions of Christensen's job capacity responsibilities, Plaintiff makes no factual showing that Christensen directed, participated in, or had knowledge of any alleged inadequate medical treatment. Furthermore, Christensen is not a licensed

MEMORANDUM DECISION AND ORDER - 10

medical provider; thus, no there is no plausible state law medical negligence claim as to his conduct. In light of the foregoing, Plaintiff has failed to state a claim for damages as to Christensen.

### C. ADA, Rehabilitation Act, and ACA Claims as to All Defendants

Plaintiff's proposed amended complaint seeks to add federal statutory claims under the Americans with Disabilities Act (ADA), Rehabilitation Act, and Affordable Care Act (ACA). Defendants assert Plaintiff has failed to state a claim under any of the laws. The Court agrees.

#### i. ADA and Rehabilitation Act Claims

Plaintiff's proposed amended complaint alleges her rights under the ADA and the Rehabilitation Act were violated by Defendants' alleged violations of her Eighth Amendment right to adequate medical treatment and for Defendants' failure to protect her from harm.

Courts apply the same standards to discrimination claims under the ADA as they do to discrimination claims under the Rehabilitation Act. *Robinson v. Catlett*, 725 F. Supp. 2d 1203, 1210 (S.D. Cal. 2010) (citing *Walton v. United States Marshals Serv.*, 492 F.3d 998, 1003 n. 1 (9th Cir.2007). To state a claim under the ADA or the Rehabilitation Act, a plaintiff must allege that: (1) she is an individual with a disability; (2) she is "otherwise qualified" to participate in or receive the

benefit of the entity's services, programs, or activities, i.e., she meets the essential eligibility requirements of the entity, with or without reasonable accommodation; (3) she was either excluded from participation in or denied the benefits of the entity's services, programs, or activities, or was otherwise discriminated against by the public entity solely by reason of her disability; and (4) the entity is a public entity (for the ADA claim) or receives federal financial assistance (for the Rehabilitation Act claim). *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir.1999).

The definition of "disability" in both statutes is virtually identical. *Doe v. Massachusetts Dep't of Correction,* 2018 WL 2994403, at *5 (D. Mass. June 14, 2018). Disability is defined under the ADA as: (A) a physical or mental impairment that substantially limits one or more major life activities of the individual; (B) a record of the impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). An individual is "substantially" limited in a major life activity if her limitation "is a severe restriction ... compared to how unimpaired individuals normally" engage in that activity. *See Walton,* 492 F.3d at 1007.

**MEMORANDUM DECISION AND ORDER - 12**

Notably, state prisons, like IDOC fall "within Title II's statutory definition of 'public entity,' which includes 'any ... instrumentality of a State ... or local government.'" *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206 (2008) (citing 42 U.S.C. § 12131(1)(B)).

Plaintiff does not identify a physical or mental impairment specifically tied to her ADA and Rehabilitation Act claims. Instead, Plaintiff presents the each claim unadorned by any supporting factual contentions. Plaintiff's amended complaint does allege, however, that she asked for accommodations for her gender dysphoria, such as female commissary items—but that Defendants failed to provide them. Dkt 33 at 44; *See Robinson v. Catlett*, 725 F. Supp. 2d 1203, 1210 (S.D. Cal. 2010) (where the plaintiff's ADA claim failed because he did not allege that he was denied the benefits of an entity's program solely by reason of his disability). Notably, however, it is unclear whether gender dysphoria qualifies as a disability under the ADA.[3]  Nevertheless, at this stage, because Plaintiff has failed to allege a disability, her ADA and Rehabilitation Act claims fail.

---

[3] *See e.g. Blatt v. Cabela's Retail, Inc.*, No. 5:14-CV-04822, 2017 WL 2178123, at *4 (E.D. Pa. May 18, 2017) (where "it is fairly possible to interpret the term gender identity disorders narrowly to refer to simply the condition of identifying with a different gender, not to exclude from ADA coverage disabling conditions that persons who identify with a different gender may have—such as [the plaintiff's] gender dysphoria, which substantially limits her major life activities of interacting with others…."); *Parker v. Strawser Constr., Inc.*, 307 F. (Continued)

### ii.     ACA Claim

Plaintiff alleges that Defendants violated the ACA, 42 U.S.C. § 18116. The ACA prohibits covered entities from discriminating on the basis of sex for the purposes of providing health care services. 42 U.S.C.A. § 18116(a). Covered entities include "any health program or activity, any part of which is receiving Federal financial assistance...." *Id.* However, beyond citing the statutory section, Plaintiff includes no specific allegations to support her ACA claim—in fact, she only listed the claim once, in her initial motion. *See* Dkt. 31 at 3. As set forth above, although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it requires more than threadbare recitals of a cause of actions. Here, all Plaintiff provides is the conclusory statement that Defendants violated the ACA. AS such, she has failed to state a claim under the ACA.

## CONCLUSION

Plaintiff's proposed amended complaint (Dkt. 33) fails to state any additional claims for which relief could be granted. The Court will deny the motion

---

Supp. 3d 744, 755 (S.D. Ohio 2018) (where Court declined to find that gender dysphoria is an impairment under the ADA where the plaintiff did not allege her "gender dysphoria was caused by a physical impairment or that gender dysphoria always results from a physical impairment."); *Doe v. Northrop Grumman Sys. Corp.*, 418 F. Supp. 3d 921, 930 (N.D. Ala. 2019) (where the plaintiff made clear "allegations that his condition [was] a medical one that [did] not result from a physical impairment.")

to amend in full. As such, the prior rulings in the IRO (Dkt. 28) remain in effect. However, the surviving claims for injunctive relief are moot, given Plaintiff's transfer from IDOC custody.

## ORDER

**IT IS ORDERED that:**

1. Plaintiff's Motion to Amend the Complaint (Dkt. 31) is **DENIED**.

DATED: May 29, 2020

B. Lynn Winmill
U.S. District Court Judge